IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROD R. BLOEDOW,

                Plaintiff,                Case No. 3:08 CV 2914

  -vs-

                                        MEMORANDUM  OPINION

CSX TRANSPORTATION, INC., et al.,

                Defendant.

KATZ, J.

This matter is before the Court on Defendants CSX Transportation, Inc. ("CSXT") and Brotherhood of Locomotive Engineers and Trainmen's ("BLET") (collectively "Defendants") motion to reassign (Doc. 13) and, alternatively, motion to dismiss (Doc. 14 & 15). Plaintiff Rod Bloedow ("Plaintiff") has filed briefs opposing Defendants' motions (Doc. 19 & 20) and Defendants have filed reply briefs (Doc. 23 & 24).

**I.**    **Background**

The central issue before the Court is whether Plaintiff's claims are barred by principles of *res judicata*. In the related 2004 decision, Hon. Judge Ann Aldrich summarized the dispute before the court at that time:

> Bloedow contends that his seniority date as a CSX locomotive engineer should be December 2, 1998. CSX hired Bloedow as a trainman-conductor in 1998 and he applied for the training course needed to become a locomotive engineer. In November 1998 there was a shortage of engineers at CSX's Walbridge, Ohio facility, prompting CSX to ask the trainmen's union ("UTU") to assign trainmen there to take the engineer training course. Bloedow was not given the opportunity to take the course that started on December 2, 1998, but some more junior trainmen were. Instead, Bloedow was enrolled in the next course, commencing on February 22, 1999.
>
> On December 9, 1998 Bloedow sent a grievance letter to his UTU vice chairman, contending that Rule 97 of the 1994 collective bargaining agreement ("CBA") between CSX and the UTU obligated CSX to inform him of its need for engineers. On January 6, 1999 the UTU wrote a letter of complaint to CSX's Director of

> Employee Relations on Bloedow's behalf. The CSX official responded by letter dated January 20 and the UTU replied by letter dated January 28. The UTU and CSX apparently reached a common understanding: (1) Bloedow had been "runaround," i.e. bypassed by junior trainmen who were accepted into the December 1999 course; but (2) the UTU had agreed to waive the CBA's posting requirements due to the critical shortage of engineers. The UTU pointed out the practice of granting such bypassed employee the same seniority date as the junior employees accepted into training for the higher position before him.
>
> On March 5, 1999 CSX agreed to resolve the dispute by promising that if Bloedow finished the February 1999 course, he would be accorded the December 1998 seniority date. This letter from CSX to the UTU is what Bloedow calls "the settlement agreement." (CSX's letter states that it sent a copy to a BLE Chairman Menefee, but Menefee denies ever receiving it.) In August 1999, Bloedow finished the engineers course (and became a member of the BLE). Consistent with CSX's March 5, 1999 letter to the UTU, CSX posted Bloedow's seniority date as December 2, 1998.
>
> In September 2000, however, CSX changed the date to February 22, 1999, apparently because the BLE's Menefee insisted the later date was the right one. Bloedow states that he became aware of the adverse change to his seniority date on September 15, 2000. He tried to have the earlier date reinstated, including meeting with Menefee. Menefee made hopeful comments but gave evasive answers to his questions and requests for the earlier date. After October 2000 Bloedow had no communication with Menefee, dealing instead with subordinate BLE official Barber. Bloedow and Barber exchanged numerous e-mails and telephone calls from about November 2000 through March 2002, but the BLE was unable or unwilling to ask CSX to reinstate the earlier seniority date.
>
> According to Bloedow, in March 2002 he and Barber had a meeting in which Barber told him to go ahead and file a lawsuit if that was what he planned to do. On April 30, 2002 Bloedow received a letter from CSX stating that in August 2000, the BLE had "directed" CSX to move his seniority date to February 1999. Bloedow filed the instant action on July 3, 2002.

*Bloedow v. CSX Transp., Inc.*, 319 F.Supp.2d 782, 785-786 (N.D. Ohio) ("*Bloedow I*").

Judge Aldrich dismissed Plaintiff's claims and held that Bloedow's claims were untimely and thus barred. Judge Aldrich decided that by December 15, 2001 Plaintiff had "sufficient knowledge to trigger accrual of his hybrid claims." *Id.* at 788. Applying a six month statute of limitations, the court held Plaintiff's action was barred as of May 15, 2002, two months prior to the filing of the suit. *Id.*

2

Since the decision in *Bloedow I*, Plaintiff has again disputed his seniority date. Plaintiff claims that his new dispute arises out of a change in the Collective Bargaining Agreement ("CBA"). The previous CBA, which Plaintiff cited in *Bloedow I*, stated in pertinent part:

> (d) A seniority roster of engineers will be compiled in order of their seniority. Rosters will be revised and posted under glass (showing actual date of posting) and in a conspicuous place at all engine terminals and when necessary, at other points agreed upon, in January and July of each year, and two (2) copies furnished to each Local Chairman of the seniority district affected.
>
> Seniority rosters will be subject to correction on proof of error or omission if written protest is made within sixty (60) days from date of posting with the understanding that (except to correct typographical errors) protests in connection with rosters posted after June 1, 1944 shall be confined to engineers whose names appear on the roster for the first time.

(Doc. 23 at 10). On April 25, 2007, almost three years after the *Bloedow I* decision, Article 12 of the CBA was altered to state:

> (H): Seniority lists will be revised and published in January of each year, and a copy furnished to the BLET General Chairman. In no case will any change be made in the seniority standing of Engineers after the roster has gone without written protest for two (2) years.
>
> (I): It is further understood and agreed that any and all controversies or disputes arising from the application of this Article will be handled exclusively between the General Chairman of the jurisdiction and CSXT's Highest Designated Officer

(Doc. 1-1 at ¶ 8-9) (Doc. 20-1 at 3). During the years 2007-2008, the BLET General Chairman was Rick Finamore ("Mr. Finamore") and the Highest Designated Officer was Rick Hiel ("Mr. Hiel"). (Doc. 1-1 at ¶ 10).

On September 6, 2007, Plaintiff sent a correspondence to Mr. Finamore and Midwest Regional Vice General Chairman W.P. Lyons ("Mr. Lyons") regarding his seniority dispute

3

asking Mr. Finamore to contact Mr. Hiel and instruct Mr. Hiel to adjust his seniority dates pursuant to Article 12 of the CBA. (Doc. 1-1 at ¶ 12-13). Mr. Finamore allegedly ceased all verbal communication with Plaintiff after receiving Plaintiff's letter. (Doc. 1-1 at ¶ 14). This action was allegedly motivated by a dispute between Mr. Finamore and Plaintiff regarding Mr. Finamore's conduct as General Chairman. *Id.* Plaintiff contends that Mr. Finamore failed to take any action as a result of this internal strife. (Doc. 1-1 at ¶ 19).

In April 2008, Mr. Lyons allegedly contacted Mr. Finamore by letter instructing Mr. Finamore to restore Plaintiff to a seniority date of December 2, 1998. (Doc. 1-1 at ¶ 21). Mr. Finamore purportedly continued to ignore Plaintiff and did not address the seniority dispute. *Id.* In June 2008, Plaintiff alleges that Mr. Finamore acknowledged that he had ignored Plaintiff. (Doc. 1-1 at ¶ 22). After further correspondence between Plaintiff and Mr. Finamore, Mr. Finamore produced a letter from October 2008 claiming that Mr. Hiel considered Plaintiff's seniority dispute "no longer viable." (Doc. 1-1 at ¶ 25).

As a result, on December 12, 2008, Plaintiff filed this action against CSXT and BLET claiming breach of contract and duty of fair representation ("*Bloedow II*"). (Doc. 1-1 at ¶¶ 26-43).

On February 12, 2009, Defendants each filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 14, 15). On the same day, Defendants filed a motion to reassign the case to Judge Aldrich. (Doc. 13).

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a

motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 127 S.Ct. at 1965 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statements need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (citing *Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. Discussion

Defendants make three primary arguments. First, Defendants argue that since *Bloedow I* and *Bloedow II* are related cases, this action should be reassigned to Judge Aldrich in order to promote judicial economy. Second, Defendants argue that Plaintiff's claims should be dismissed as barred by *res judicata*. Third, Defendants argue that Plaintiff's claims should be dismissed as barred by the applicable statute of limitations. In addition to the three primary arguments, BLET moves this Court to dismiss Plaintiff's claims based on the assertion that Plaintiff failed to exhaust remedies.

#### A. Motion to Reassign

Local Rule 3.1(b)(3) states: "Related Cases. A case may be re-assigned as related to an earlier case with the concurrence of both the transferee and transferor District Judges, with or without motion by counsel." Here, Defendants argue in favor of reassignment based on the assumption that judicial economy would be promoted if this Court transfers the action to Judge Aldrich. Although *Bloedow I* and *Bloedow II* share a similar factual history, *Bloedow I* has been closed for over five years. The likelihood that reassignment would promote judicial economy is slight. Therefore, the Court denies Defendants' motion to reassign.

#### B. Motion to Dismiss

Defendants urge the Court to dismiss Plaintiff's action under Fed. R. of Civ. P. 12(b)(6) because Plaintiff's claims are barred by the doctrine of *res judicata* and the applicable statute of limitations.

6

The Sixth Circuit requires four elements to be satisfied in order to establish *res judicata*. "A claim is barred by *res judicata* if there is: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; (4) an identity of the causes of action." *Holder v. City of Cleveland*, 287 Fed. App. 468, 470 (6th Cir. 2008) (citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006)). Plaintiff admits that the first two elements are met. (Doc. 20 at 4). However, Plaintiff contends that Defendants have not established the third and fourth elements. (*Id.* at 5).

"In order for the third and fourth elements to be satisfied, 'there must be an identity of the causes of action, that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Holder*, 287 Fed. App. at 470 (quoting *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). In other words, "where the two causes of action arise from the 'same transaction, or series of transactions,' the plaintiff should have litigated both causes in the first action and may not litigate the second issue later." *Holder*, 287 Fed. App. at 471 (quoting *Rawe*, 462 F.3d at 529).

Responding to Defendants' *res judicata* claims, Plaintiff argues that "the BLET took steps pursuant to Article 12(I) to adjust Bloedow's seniority as of March 3, 2008." (Doc. 20-2 at 4). Plaintiff claims that these steps establish a different "core of operative facts" and therefore that the third and fourth elements of *res judicata* are not satisfied. Plaintiff further contends that at some point Mr. Finamore wrote a letter to the Highest Designated Officer of CSXT, Mr. Heil, demanding Plaintiff's seniority claims be adjusted pursuant to Article 12(I) of the CBA. *Id.* Plaintiff claims his action taken pursuant to Article 12(I) is a "critical factor for the Court in determining the issue of *res*

7

*judicata* since this is new contract language which did not exist at the time of *Bloedow I*, there was a different General Chairman who had taken office and a clear reference that pursuant to Article 12(G) seniority lists were subject to revision." *Id*. In addition, Plaintiff states that "the General Chairman, Mr. Finamore, began handling Mr. Bloedow's current seniority issue as a new issue and, under the new Agreement, was demanding CSXT adjust Blowdow's seniority date, further demonstrating [that] BLET was treating Mr. Bloedow's current seniority dispute as a new issue." *Id.*

Plaintiff is correct in his assertion that the new language authorizes revision of the seniority lists each year with the potential for change in those lists for two years following the revisions. However, the old and new CBAs are extremely similar, and the new CBA does not offer him fresh rights under which he may base new claims regarding the setting and appealing of seniority dates. Also, the new CBA provision does not address revival of time-barred or previously adjudicated claims, but rather places new limits on when seniority issues may be raised. Plaintiff's reading of the language in the new provision could potentially give new claims to those with seniority disputes going back to the inception of CSX railroad.

The Sixth Circuit has stated that a provision changes substantive rights when it "creates or imposes an obligation where none existed before." *In re Huffman*, 408 F.3d 290, 294 n.3 (6th Cir. 2005) (citing *Weil v. Taxicabs of Cincinnati, Inc.*, 139 Ohio St. 198, 203 (1942)). On the other hand, a provision is remedial in nature if it "[has] to do with the methods and procedure by which rights are recognized, protected and enforced, not with the rights themselves." *Id.*

Here, the change in the CBA alters the procedure used to establish, publish, and appeal

8

seniority lists. For example, the revision mandates that the General Chairman of the BLET and CSXT's Highest Designated Officer are the exclusive managers of controversies or disputes arising out of the application of Article 12. (Doc. 1-1 at ¶ 9). The revisions have to do with methods and procedures, not with the imposition of obligations. Therefore, they are remedial in nature.

In *Holder v. City of Cleveland*, Holder filed suit against the City alleging pay discrimination in violation of the Federal Equal Pay Act and common law breach of contract. 287 Fed. App. at 469-70. After consenting to jurisdiction of Magistrate Judge David S. Perelman, the court granted summary judgment in favor of the City. *Id.* at 470. Less than eight months later, Holder filed a second claim against the City alleging pay discrimination in violation of Title VII and the Ohio Equal Pay Act. *Id.* The trial court granted summary judgment for the City on *res judicata* grounds. *Id.*

Holder appealed to the Sixth Circuit contending that the third and fourth elements of *res judicata* were not satisfied. *Id.* Holder argued that her race discrimination suit and her gender discrimination suit arose from different sets of facts. *Id.* at 471. In response, the Sixth Circuit stated "both *Holder I* and *Holder II* actually arise from the same facts (disparate pay); it is the legal theory of [Holder's] claims that differ." *Id.* The court went on to adopt the District Court's position that "[Both cases] involve the same employment, same supervisor and the same circumstances." Since Holder sought recovery for the same injury in both actions, the Sixth Circuit decided *res judicata* barred the second action and affirmed the District Court. *Id.* at 472.

In *Reid v. City of Flint*, Reid filed a complaint against his former employer and his former union alleging several claims, including breach of contract and breach of the union's duty of fair representation. 2000 WL 876547 (6th Cir. June 22, 2000). Six years after the District Court granted

9

the Defendants' summary judgment on statute of limitations grounds, Reid filed another action alleging the same claims against the same parties. *Id.* at \*2. The District Court granted the union's motion to dismiss on *res judicata* and statute of limitations grounds. *Id.* at \*3. The court stated that "Reid's instant action is barred by the doctrine of *res judicata* because it simply reasserted the same claims and causes of action, based upon breach of contract . . . and breach of duty of fair representation, against the same defendants arising out of the same facts as the prior 1992 suit." *Id.* at \*5.

The present action revolves around Plaintiff's seniority dispute dating back to 1998. As was true in *Reid*, Plaintiff's action simply reasserts the same claims and causes of action against the same parties arising out of the same facts as those asserted in *Bloedow I*. In *Bloedow I*, Plaintiff asserted claims for breach of contract, breach of the union's duty of fair representation, breach of settlement agreement, and interference with contract against CSXT and BLET. (Doc. 13-3). In the present action, Plaintiff asserts claims for breach of contract and breach of the union's duty of fair representation against CSXT and BLET. (Doc. 1-1). The claims asserted in the present action are identical to some of the claims asserted in *Bloedow I* and Plaintiff asserts the claims against the same parties, pertaining to the same issues that were resolved in *Bloedow I*.

On September 6, 2007, Plaintiff wrote a letter to BLET in an effort to correct an "unresolved seniority dispute" between himself and Defendants. (Doc. 14-5 at 1). Plaintiff again wrote a letter to BLET in March 2008 regarding a seniority dispute. (Doc. 20-2). Although these letters may have been written, as Plaintiff claims, in response to a change in the language of the Agreement, both letters attempt to resurrect the seniority dispute that began in 1998 and was the subject of *Bloedow I*. The language of the March 2008 letter is particularly telling: "This letter is in reference to the

10

above captioned subject; more specifically to a matter that dates back to late 1998 and was handled by former General Chairman of the BLET and UTU and many officers of CSXT, as well as being taken to the United States District Court." (Doc. 20-2 at 1).

Plaintiff attempts to argue that his correspondence with CSXT and the BLET, paired with the revision of the CBA, creates a new cause of action through a series of "new" operative facts. (Doc. 20-2 at 4). However, at the heart of the action is the same seniority dispute that was at issue in *Bloedow I*, which was resolved in favor of Defendants. Plaintiff urges the Court to overlook this fact by pointing to correspondence between Mr. Lyons and Mr. Finamore that occurred in April of 2008. Mr. Lyons allegedly instructed Mr. Finamore to restore Plaintiff to a seniority date of December 2, 1998. (Doc. 1-1 at ¶ 21). The portion of the letter written by Mr. Lyons to Mr. Finamore that is cited in paragraph 21 of Plaintiff's Complaint makes no specific reference to the revisions in the CBA in connection with Mr. Lyons's opinion that Plaintiff's seniority date should be restored, and refers to past litigation between the parties. Rather, Mr. Lyons states: "It is my opinion after weighing all the documentation, that CSX be instructed to restore Mr. Bloedow to a seniority date of December 2, 1998. He has waited long enough. Please make this right, as Rod has been more than patient in awaiting a final resolution to this issue."

Because all four requirements of *res judicata* are met, Plaintiff's claims are barred. However, even if *res judicata* fails to bar Plaintiff's claims, the claims are barred by the statute of limitations. The first determination that must be made regarding the statute of limitations is the point in time at which the clock begins to run. The "standard rule" as set forth by the Supreme Court states that the clock begins "when the plaintiff has 'a complete and present cause of action.'" *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)

11

(quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)). The Sixth Circuit stated: "Under federal law the statute begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991)).

In 1983, the Supreme Court stated, "we refer to § [160(b)] of the National Labor Relations Act, which establishes a six-month period for making charges of unfair labor practices to the [National Labor Relations Board]." *DelCostello v. IBT*, 462 U.S. 151, 169. The National Labor Relations Act provides:

> [w]henever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board shall have power to…. Provided: that no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board….

29 U.S.C. §160(b).

Referring to Defendants' statute of limitations claims, Plaintiff argues the cause of action did not arise until the effective date of the revised CBA, April 25, 2007. (Doc. 20 at 8). However, Plaintiff "knew or should have known of the injury which forms the basis of [his] claims" no later than the date on which it became clear that the union would not take further action regarding his dispute. *Ruff*, 258 F.3d at 500. In *Bloedow I*, Hon. Judge Aldrich stated:

> [T]here is no genuine issue as to the fact that by December 15, 2001, Bloedow had sufficient knowledge to trigger accrual of his hybrid claims. Consequently, absent equitable tolling, section 160(b)'s six month limitations period on those claims expired no later than May 15, 2002.

(Doc. 13-4 at 6-7). In a footnote contained in the above quote, Judge Aldrich stated that the mere fact that the "union continued to breach its duty of fair representation . . . does not extend the limitations

12

period on a continuing violation theory." *Id.* at 7. Therefore, this Court finds, as did Judge Aldrich, that as of May 15, 2002, Plaintiff's claims were barred by the applicable statute of limitations.

**IV.     Conclusion**

For the reasons discussed herein, Defendants' motion to reassign is hereby denied (Doc. 13) and Defendants' motions to dismiss are hereby granted. (Doc. 14, 15).

IT IS SO ORDERED.

    s/ *David A. Katz*

DAVID A. KATZ

U. S. DISTRICT JUDGE